**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 9, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TYALEA CHANTRICE BRITT,

Petitioner-Appellant,

v.

MILLICENT NEWTON EMBRY,

Respondent-Appellee.

No. 07-6058
(D.C. No. 5:06-CV-00701-W)
(W.D. Okla.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **HENRY**, Chief Judge, **TYMKOVICH**, and **HOLMES**, Circuit Judges.

Petitioner-Appellant Tyalea Britt, an Oklahoma state prisoner appearing

*pro se*, seeks a certificate of appealability ("COA") under 28 U.S.C. §

2253(c)(1)(A) to challenge the federal district court's denial of her habeas corpus

petition. Since the federal district court issued an order denying a COA, our

jurisdiction arises under both 28 U.S.C. §§ 1291 and 2253(a). Reviewing Ms.

---

[*] This Order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1. After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this matter. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Britt's *pro se* filings liberally,[1] we hold that no reasonable jurist could conclude that the federal district court's denial was incorrect. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, we **DENY** Ms. Britt's application for a COA and **DISMISS** the appeal.

## I. BACKGROUND

Ms. Britt was charged and convicted of First Degree Murder for the shooting and subsequent death of sixteen-year-old Thomas Morgan. On the night of the incident, Ms. Britt heard a group of males having a discussion outside of her home. Ms. Britt interjected into the conversation and, as a result, became engaged in a heated, intense argument, involving yelling and exchanges of obscenities with Mr. Morgan. At one point in the argument, a bystander, Freddie Leake, tried to stop the argument but had difficulty restraining Mr. Morgan. Mr. Leake ultimately was unsuccessful, and the argument continued.

Ms. Britt testified that she was afraid of Mr. Morgan during the argument. She did not have a weapon on her person during the argument until another bystander, Jerry Hawkins, approached and handed a gun to her. Ms. Britt shot Mr. Morgan in the head at point-blank range and subsequently fled from the

---

[1] Because Ms. Britt is proceeding *pro se*, we review her pleadings and filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 815 (10th Cir. 2007).

scene. Six days after the shooting, Mr. Morgan died at a hospital from the gunshot wound to his head.

Ms. Britt was tried and convicted by a jury and sentenced to serve life imprisonment without the possibility of parole. Ms. Britt filed a direct appeal with the Oklahoma Court of Criminal Appeals ("OCCA"), which affirmed her conviction. Ms. Britt then filed an application for postconviction relief in the District Court of Oklahoma County, which was later denied. Ms. Britt appealed this decision to the OCCA, which declined jurisdiction and dismissed the appeal as untimely. Ms. Britt filed a Petition for Habeas Corpus in federal district court. The district court denied her petition, adopting the thorough 34-page Report and Recommendation prepared by a magistrate judge. The district court also denied a COA, and Ms. Britt is appealing this denial.

## II. DISCUSSION

Appellant raises nine issues as potential grounds for habeas relief. These issues are as follows: (1) whether the trial court erred in admitting four photographs of the victim; (2) whether the trial court failed to conduct an adequate post-treatment competency hearing; (3) whether the trial court erred in failing to instruct the jury on the lesser included offense of manslaughter; (4) whether the prosecutor committed reversible misconduct; (5) whether Ms. Britt was deprived of a fair trial when the prosecutor asked her about her previous criminal acts as a juvenile; (6) whether the State's failure to reveal to defense

counsel that it intended to introduce a radio interview of her at trial is reversible error; (7) whether Ms. Britt's trial counsel was ineffective for failing to raise insanity as a defense and for failing to adequately cross-examine Officer Randy Scott regarding her competency to waive her *Miranda* rights; (8) whether the sentence Ms. Britt received was excessive because the jury's questions about parole were not answered; and (9) whether cumulative error occurred.

Federal law requires a petitioner to first obtain a COA before appealing the denial of a motion for habeas corpus relief under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2253(c)(1). This mandate is jurisdictional. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (noting COA review is distinct from a merits review of petition). In order to obtain a COA, Ms. Britt must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

If a claim already has been adjudicated on the merits in state court proceedings, a petitioner is entitled to federal habeas relief only if he or she can establish that the state court's adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "Subsection (d)(1) governs claims of legal error while subsection (d)(2) governs claims of factual error." *House v. Hatch*, 527

-4-

F.3d 1010, 1015 (10th Cir. 2008). Pursuant to 28 U.S.C. § 2254(e)(1), factual findings of a state court are presumed correct unless the petitioner rebuts the presumption by a showing of clear and convincing evidence. *Id.* at 1019.

Regarding claims of legal error, a state court's determination is "contrary to" clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court but arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court's determination constitutes "an unreasonable application" of Supreme Court precedent if it identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the case. *Id.* at 413; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). As to this latter inquiry, the focus is on "whether the state court's application of the clearly established federal law is objectively unreasonable," i.e., "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *House*, 527 F.3d at 1019 (internal quotation marks omitted).

## A. Admission of Photographs

As Ms. Britt's first ground for relief, she contends that the trial court erred in admitting four photographs of the victim. Because the photographs were gruesome and Ms. Britt had admitted to shooting the victim, she argues that admission of the photographs was unnecessary and that their probative value was

outweighed by their prejudicial impact on the jury. Ms. Britt relies on the Fourteenth Amendment to argue that the admission of the photographs denied her a fair trial and due process.

For purposes of this habeas action, the admission of the photographs is reviewed only to determine whether Ms. Britt's trial proceedings were rendered fundamentally unfair. *Spears v. Mullin*, 343 F.3d 1215, 1225-26 (10th Cir. 2003) (when reviewing habeas petitioner's challenge to admission of photographic evidence, court considers whether the admission of evidence so infected proceedings with unfairness as to render jury's verdict a denial of due process); *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999) ("The essence of our inquiry [on federal habeas review] under the Fifth, Sixth, and Eighth Amendments, as applied to the states under the Fourteenth Amendment, is whether the admission of the photographs rendered the proceedings fundamentally unfair."). The fundamental fairness analysis is approached "with 'considerable self-restraint.'" *Smallwood*, 191 F.3d at 1275 (quoting *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998)). "Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." *Id.*

On habeas review, however, we must give proper deference to the state court's determinations. 28 U.S.C. § 2254(d)(1). Although the photographs at issue were graphic in that they depicted a young man with a gunshot wound to the

-6-

head post-surgery, on direct appeal the OCCA found that they were probative in that they established *corpus delicti* and corroborated the medical examiner's testimony. Given the probative nature of the photographs, the gruesome character of the crime itself, and the wealth of additional evidence supporting Ms. Britt's conviction, the OCCA's rejection of this claim was not unreasonable. The admission of the photographs was not so unduly prejudicial as to render the proceedings against her fundamentally unfair. *See Smallwood*, 191 F.3d at 1275.

**B. Post-Treatment Competency Hearing**

Ms. Britt raises a federal due process claim by arguing that she did not receive a full and fair competency hearing. Despite her stipulation to competency and the trial court's finding of competency, she contends that her "obvious mental issues" make the procedures that were employed inadequate. Aplt. Opening Br. at 9. We review Ms. Britt's due process claim on both procedural and substantive grounds. *Allen v. Mullin*, 368 F.3d 1220, 1239 (10th Cir. 2004). The criminal trial of an incompetent defendant violates due process. *Id.* at 1238.

"A procedural competency claim is based upon a trial court's alleged failure to hold a competency hearing, or an adequate competency hearing, while a substantive competency claim is founded on the allegation that an individual was tried and convicted while, in fact, incompetent." *Id.* at 1239 (internal quotation marks omitted). The test for determining competency to stand trial is "'whether [defendant] has sufficient present ability to consult with [her] lawyer with a

-7-

reasonable degree of rational understanding—and whether [she] has a rational as well as factual understanding of the proceedings against [her].'" *Id.* at 1238-39 (first alteration in original) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

> To make out a procedural competency claim, a defendant must raise a bona fide doubt regarding [her] competency to stand trial[.] This requires a demonstration that a reasonable judge should have doubted the defendant's competency. It does not require proof of actual incompetency. A substantive competency claim, on the other hand, requires the higher standard of proof of incompetency by a preponderance of the evidence.

*Id.* at 1239 (citations and internal quotation marks omitted) (citing *Cooper v. Oklahoma*, 517 U.S. 348, 368-69 (1996)).

Under Oklahoma law, upon the filing of an application for determination of competency, the trial court holds a hearing to examine the application and to determine if sufficient facts are alleged to create a doubt as to the competency of the defendant. Okla. Stat. tit. 22, § 1175.3 (2003); *Allen*, 368 F.3d at 1224. If the court finds a doubt as to the competency of the defendant at this hearing, the defendant is ordered to undergo an examination by doctors or appropriate technicians. Okla. Stat. tit. 22, § 1175.3; *Allen*, 368 F.3d at 1224. The Oklahoma statutes further prescribe that within thirty days after the required § 1175.3 determination is made by the examiner(s), a post-examination hearing shall be held to determine the defendant's competency. Okla. Stat. tit. 22, § 1175.4.

The trial court initially ordered the examiner to make the following determinations: (1) is Ms. Britt able to appreciate the nature of the charges filed against her? (2) is Ms. Britt able to consult with her lawyer and rationally assist in the preparation of her defense? (3) if the answer to question 1 or 2 is no, can Ms. Britt attain competency within a reasonable time if provided with a course of treatment, therapy, or training? (4) is Ms. Britt a mentally ill person or a person requiring treatment as defined by statute? and (5) if Ms. Britt were released without treatment, therapy, or training, would she probably pose a significant threat to the life or safety of herself or others?

On April 17, 2002, after the examiner found Ms. Britt incompetent to stand trial, Ms. Britt received a competency evaluation and hearing. The trial court reviewed the mental health records from the examination, determined that Ms. Britt was incompetent to stand trial, and ordered that she be committed to a mental health institution. After three months of treatment, a post-treatment report of Ms. Britt's mental health indicated that Ms. Britt no longer suffered "from a mental disorder or deficit which would render her incapable of understanding the proceedings against her, assisting legal counsel in her defense, or cooperating with the Court in her own best interest." R., OCCA Vol. I, at 98 (Evaluation by Dr. Roberson, dated July 12, 2002).

Subsequently, the trial court held a post-treatment competency hearing for Ms. Britt on February 24, 2003. On direct appeal, the OCCA found that at this

hearing, Ms. Britt, in the presence of her counsel, was afforded an opportunity to offer evidence to the court but instead stipulated to the medical report finding her competent to stand trial. Accordingly, the court ordered the trial proceedings to resume. These findings are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1) and we do not discern anything that would cause us to question that presumption. Further, the OCCA's determination that the procedure used by the trial court in this case was sufficient to comply with the requirements of § 1175.4 was not unreasonable.

Based upon the totality of the evidence, we conclude that Ms. Britt has not made a substantial showing that the state court rulings relating to the competency question resulted in a violation of her federal due process rights. In particular, Ms. Britt has not demonstrated that the trial court ought to have entertained a bona fide doubt as to her competency to stand trial. And it follows with even greater force that she has not cleared the higher, substantive hurdle of establishing proof of incompetency by a preponderance of the evidence.

## C. Manslaughter Instruction

Ms. Britt claims that the trial court erred in failing to instruct the jury on the lesser included offense of manslaughter. In *Beck v. Alabama*, 447 U.S. 625 (1980), the Supreme Court concluded that lesser-included offense instructions are required only in capital cases when supported by the evidence. The Supreme Court has expressly declined to extend this ruling to noncapital cases such as Ms.

Britt's, stating that "[w]e need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case." *Id*. at 638 n.14. We have previously held that "a petitioner in a non-capital case is not entitled to habeas relief for the failure to give a lesser-included offense instruction, even if in our view there was sufficient evidence to warrant the giving of an instruction on a lesser included offense." *Lujan v. Tansy*, 2 F.3d 1031, 1036 (10th Cir. 1993) (internal quotation marks omitted). Ms. Britt has not provided clear and convincing evidence sufficient to overcome the presumption of correctness afforded to the trial court's and the OCCA's findings that the evidence did not support giving such an instruction. Nor has she shown that their determinations were unreasonable. Accordingly, habeas relief is not warranted.

## D. Prosecutorial Misconduct

Ms. Britt contends that the prosecutor committed misconduct by engaging in the following: emphasizing the victim's age and the tragedy "which had struck the family of the victim" during closing argument to evoke sympathy from the jury; casting aspersions on the defense, thereby distracting the jury away from the evidence; and asking inappropriate questions during the examination of Officer Scott directed at eliciting his beliefs about Ms. Britt's guilt. Ms. Britt contends that this misconduct violated her Sixth Amendment right to an impartial jury and deprived her of a fair trial and due process of law.

Prosecutorial misconduct gives rise to federal habeas corpus relief only when such misconduct either violated a specific constitutional right or "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see Hamilton v. Mullin*, 436 F.3d 1181, 1187 (10th Cir. 2006). To determine whether a trial is rendered fundamentally unfair, the court examines the entire proceeding, "including the strength of the evidence against the petitioner . . . as well as [a]ny cautionary steps–such as instructions to the jury–offered by the court to counteract improper remarks." *Bland v. Sirmons*, 459 F.3d 999, 1024 (10th Cir. 2006) (alteration in original) (internal quotation marks omitted). "'[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned.'" *Id.* (alteration in original) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." *Id.*

Ms. Britt raised these same points on direct appeal, and having reviewed the instances of alleged prosecutorial misconduct, we hold for substantially the same reasons as those given by the district court that the OCCA's denial of this claim was not contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). Ms. Britt has not established that her trial was rendered fundamentally unfair or that her constitutional rights were otherwise infringed. We note first that with respect to Ms. Britt's claim regarding the

-12-

prosecutor's comments about age and tragedy to the family that no contemporaneous objections were made. We agree with the district court that the comments were within the wide range of argument permitted on closing argument as they were based on the evidence and not merely appeals for sympathy. Second, after the prosecutor made belittling comments about the defense's strategy, the trial judge did remind the jury that the burden was on the State to prove whether the defendant was guilty or not. Third, with respect to the last claim, we note that the judge instructed the prosecutor to rephrase her question to avoid discussing Officer Scott's beliefs about Ms. Britt's guilt. In addition to our reasons for dismissing each of Ms. Britt's individual complaints, we find that in the context of the whole trial, these comments would have had little impact. Ms. Britt, along with other witnesses, testified that she shot the victim. Accordingly, in the context of this case, we find that these statements by the prosecutor do not provide a basis for habeas relief.

**E. Cross-Examination Regarding Juvenile Conviction**

Ms. Britt asserts that she was deprived of a fair trial when the prosecutor asked her on cross-examination, "You weren't arrested when you were 13 years old for assault and battery upon a police officer and put on probation as a juvenile?" Aplt. Opening Br. at 14-15; R., Okla. County Dist. Ct. Vol. III, Tr. at 213 (Jury Trial, dated Oct. 8, 2003). Without any objection to the question, Ms. Britt answered, "Oh, yes." R., Okla. County Dist. Ct. Vol. III, Tr. at 213.

-13-

As with other state law issues, on habeas review, this Court can only review state court evidentiary rulings "to determine whether the error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Hooker v. Mullin*, 293 F.3d 1232, 1238 (10th Cir. 2002) (internal quotation marks omitted). Generally, Oklahoma state law prohibits the admission of a defendant's juvenile convictions. Okla. Stat. tit. 12, § 2609(D) (1993 & Supp. 2004). In order to impeach a defendant's prior statement, "the State . . . may ask a defendant about [her] prior conduct, but not about the juvenile proceeding that followed." *Douglas v. State*, 951 P.2d 651, 665 (Okla. Crim. App. 1997).

Here, as authorized by Oklahoma law, the prosecutor principally focused its questions on Ms. Britt's juvenile *conduct* to impeach Ms. Britt's prior testimony that she "had never experienced anything like this" and "had never been in trouble before." R., Okla. County Dist. Ct. Vol. III, Tr. at 211, 212. Even if some part of the prosecutor's inquiry could be said to have crossed the permissible line drawn by Oklahoma law, we would be hard-pressed to conclude that the trial court's allowance of the questioning infected the proceedings to a sufficient degree to give rise to a due process violation.

**F.  Admission of Radio Interview**

Ms. Britt claims that her due process rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated because the State failed to reveal to defense counsel that it intended to introduce a radio interview of her at trial.  Ms. Britt does not, however, explain how her constitutional rights were violated.

The State questioned Ms. Britt about a radio interview she conducted a month prior to the jury trial from jail.  Upon the defense counsel's objection to the questioning about the radio interview, the trial court found that since Ms. Britt had conducted the interview and it was broadcast, the interview was therefore available for public use.  The Oklahoma Criminal Discovery Code requires that, upon the request of the defense, the State shall disclose any "recorded statements and the substance of any oral statements made by the accused."  Okla. Stat. tit. 22, § 2002(A) (2003).  It is fundamental that the courts do not grant habeas relief for errors of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  Accordingly, we cannot grant habeas relief simply based upon a violation of Oklahoma law.  Furthermore, we perceive no due process violation since the radio interview was public.

**G.  Ineffective Assistance of Counsel**

Ms. Britt asserts that her trial counsel was ineffective for failing to raise insanity as a defense and for failing to question Officer Randy Scott regarding her competency to waive her *Miranda* rights.  An ineffective assistance of counsel

-15-

claim has two components: A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668 (1984).

Under the performance prong of the *Strickland* test, "the proper standard for attorney performance is that of reasonably effective assistance." *Id.* at 687. Our "scrutiny of counsel's performance must be highly deferential" and avoid "the distorting effects of hindsight." *Id.* at 689. Under the prejudice prong of the *Strickland* test, "a defendant must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Harfst*, 168 F.3d 398, 402 (10th Cir. 1999) (internal quotation marks omitted).

We need not address both components of the *Strickland* inquiry. *Strickland*, 466 U.S. at 697 ("Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."). The Supreme Court has declined to articulate specific guidelines for appropriate attorney conduct and instead has emphasized that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (alteration in original) (internal quotation marks omitted).

-16-

To assert an insanity defense, Oklahoma requires "the defendant to show that at the time of the crime [s]he suffered from a mental disease or defect rendering [her] unable to differentiate between right and wrong, or unable to understand the nature and consequences of [her] actions." *James v. Gibson*, 211 F.3d 543, 553 (10th Cir. 2000) (internal quotation marks omitted). Prior to trial, defense counsel indicated its intent to raise Ms. Britt's mental competency as a defense. In a written notice, defense counsel stated that Ms. Britt's mental illness at the time of the offense would be a significant factor in her defense at trial and should be considered by the jury. Counsel, therefore, clearly considered a defense of insanity. Counsel's rejection of that defense for one of self-defense appears to have been a strategic decision. "Whether to raise a particular defense is one aspect of trial strategy, and informed strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong." *Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005) (internal quotation marks omitted). We agree with the district court that counsel's performance did not fall below the standard of reasonableness. Accordingly, we perceive no reversible error on Ms. Britt's ineffective assistance claims.[2]

---

[2]    In her COA application, Ms. Britt also seems to be endeavoring to assert a sentencing-related ineffective assistance of counsel claim involving jury instructions. Specifically, Ms. Britt asserts that her trial counsel was ineffective
(continued...)

## H. Information for Jury About Sentencing

Ms. Britt claims that the sentence she received was excessive because the jury did not receive the information it needed to make a full and fair determination as to sentencing. Ms. Britt claims that while deliberating, the jury asked the trial court two questions regarding sentencing. First, the jury asked,

---

[2](...continued)
for failing to request a jury instruction concerning Oklahoma's 85% Rule, pursuant to *Anderson v. State*, 130 P.3d 273 (Okla. Crim. App. 2006). COA Application at 1. In homicide cases like this one, that rule provides that a "defendant will not be eligible to be considered for parole until he has actually served at least eighty-five percent (85%) of the sentence imposed." *Anderson*, 130 P.3d at 282. On several fronts, this ineffective assistance of counsel claim is problematic and, ultimately, unavailing. Ms. Britt did not raise the claim in her habeas petition; consequently, it is not properly before us. *See Brewer v. Reynolds*, 51 F.3d 1519, 1528 n.17 (10th Cir. 1995). Indeed, Ms. Britt does not even appear to have carried the claim over to the arguments of her appellate brief. Furthermore, *Anderson* was not decided until after Ms. Britt's trial and after her conviction became final; it expressly stated that "[a] trial court's failure to instruct on the 85% Rule in cases before this decision will not be grounds for reversal," 130 P.3d at 283; and it did not purport to predicate its holding on the United States Constitution. Under these circumstances, we would be unable to conclude that Ms. Britt's counsel was constitutionally ineffective in failing to request an 85% Rule instruction. *Haney v. Addison*, 275 F. App'x 802, 806 (10th Cir. 2008) ("[T]he failure of Mr. Haney's lawyer to request an instruction on the 85% Rule did not constitute ineffective assistance of counsel because *Anderson* was not decided until four months after his trial."), *petition for cert. filed*, (U.S. July 24, 2008) (No. 08-6757); *see Cheadle v. Dinwiddie*, 278 F. App'x 820, 823 (10th Cir. 2008) ("Although the OCCA recently changed its position with regard to whether the jury can be instructed on how much time a defendant must serve before parole eligibility, that court did not base its change on anything in the United States Constitution, nor did it apply the new rule retroactively. In sum, Cheadle has not shown appellate counsel was constitutionally ineffective for failing to critique the work of trial counsel." (citing *Anderson*, 130 P.3d at 283)), *petition for cert. filed*, (U.S. Oct. 21, 2008) (No. 08-6972).

"With a life sentence, when is the earliest she will be eligible for parole?" Aplt. Opening Br. at 23. The trial judge responded, "That is not for your consideration." *Id.* Next, the jury inquired, "Does her current 2 years served count towards her prison time, if given life?" *Id.* The trial judge answered, "That decision is made by the Judge at the time of formal sentencing." *Id.*

Generally, habeas review of a sentence "ends once [the court determines that] the sentence is within the limitation set by statute." *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000). Under Oklahoma law, murder in the first degree is punishable by life imprisonment, life imprisonment without the possibility of parole, or death. Okla. Stat. tit. 21, § 701.9(A) (2002). Ms. Britt was sentenced to life imprisonment without the possibility of parole; her sentence is thus within the statutory range. The OCCA's determination that the sentence was permissible did not result in a decision that was contrary to or an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1). Furthermore, we have previously held that in noncapital cases the meaning of life without parole need not be further defined for a jury, and, therefore, failure to give such an instruction does not constitute a violation of federal constitutional rights. *Sallahdin v. Gibson*, 275 F.3d 1211, 1229 (10th Cir. 2002). Thus, we perceive no constitutional violation.

## I. Cumulative Error

Ms. Britt argues that the cumulative effect of the above alleged errors deprived her of a fair trial. "A cumulative-error analysis aggregates all the errors that individually have been found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they are not harmless." *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 571 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001). Cumulative-error analysis does not apply to the cumulative effect of non-errors. *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998). Because we have determined that no individual errors have occurred, we find no cumulative error.

## III. CONCLUSION

For the foregoing reasons, we **DENY** Ms. Britt's application for a COA and **DISMISS** the appeal.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge